FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

AUG 0 1 2018

JAMES N. HATTEN, Clerk
By: ‾‾‾‾‾‾ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

KOSWIRE, INC.,                    :
                                  :
    Plaintiff,              :
                                  :
    v.                      :     CIVIL ACTION NO.
                                  :     2:18-CV-00047-RWS
ALPHA STAINLESS, LTD.,            :
ALPHA WIRE & ROD SALES,           :
LLC, and ROBERT A. BOND,          :
                                  :
    Defendants.             :

### ORDER

This case comes before the Court on Defendants Alpha Stainless, Ltd.,

Alpha Wire & Rod Sales, LLC, and Robert A. Bond's Motion to Dismiss [4]

and Plaintiff Koswire, Inc.'s Motion for Limited Jurisdictional Discovery [10].

After reviewing the record, the Court enters the following Order.

### Background

This case arises out of an international sale of wire rod, which Koswire,

a Georgia Corporation, ordered from Alpha Stainless, Ltd., a company in the

United Kingdom.

Koswire is a subsidiary of Koswire, Ltd., a global leader in the stainless

AO 72A
(Rev.8/82)

steel wire industry.  (Decl. of Yong Joon Lee ("Lee Decl."), Dkt. [9-2] ¶ 3.)[1]

Koswire is Koswire Ltd.'s only manufacturing facility in the United States.  It

is located in Flowery Branch, Georgia.  (Id.)  "To meet its customers' demands,

Koswire purchases in excess of twelve million pounds of raw material annually

that it thereafter processes on-site in accordance with its customer's

specifications and orders."  (Id. ¶ 5.)

Robert A. Bond is the sole member of Alpha Wire & Rod Sales, LLC.

(Decl. of Robert Bond ("Bond Decl."), Dkt. [4-4] ¶ 3.)  Bond resides in

Connecticut, where he has lived for 49 years.  (Id. ¶ 8.)  Alpha Rod is

organized under the laws of Connecticut and also maintains its principal place

of business there.  (Id. ¶ 9.)

Being involved in the wire business for approximately 25 years, Bond

has made numerous contacts with persons in the industry.  (Id. ¶¶ 2,4.)  One of

those contacts is Tom Sigler, Koswire's former Vice President of Sales.  (Id.

¶ 4.)  Around April 2015, Bond reached out to Sigler and encouraged him to

---

[1] The Court notes that the majority of the statements in the declaration of Yong Joon Lee, Koswire's current Vice President and COO, simply buttress the allegations in the Complaint.  For the sake of clarity, the Court relies primarily on the Lee Declaration.

start purchasing raw wire materials from a new manufacturer in the United Kingdom: Alpha Stainless.[2] (Lee Decl. Dkt. [9-2] ¶ 6.) Bond then placed Sigler in touch with Alpha Stainless by setting up and participating in an introductory phone call.[3] (Id. ¶ 7; Bond Decl., Dkt. [4-4] ¶ 7.)

After the call, Alpha Stainless and Koswire continued negotiating over the phone. (Decl. of Carl Bullock ("Bullock Decl."), Dkt. [4-3] ¶ 5.) Once they reached an agreement, on May 8, 2015, Sigler emailed Alpha Stainless's CEO, Carl Bullock, and a Koswire employee to ask that they "coordinate to purchase 40,000 lbs" of hot rolled annealed and pickled ("HRAP") wire. (Id. ¶ 6; Lee Decl. Dkt. [9-2] ¶ 8.) Three days later, Koswire submitted its first purchase order to Alpha Stainless. (Lee Decl. Dkt. [9-2] ¶ 9; Id., Exs. A & C, Dkt. [9-3, 9-7].) After that, Koswire submitted two additional purchase orders–one on May 15, 2015, and the other on June 15, 2015. (Id., Exs. F & I, Dkt. [9-8, 9-11].) In all, Koswire ordered 120,000 pounds of wire rod.

---

[2] Alpha Stainless is a small company with only two employees. (Decl. of Carl Bullock, Dkt. [4-3] ¶ 22.) Based on the record, it is undisputed that Alpha Stainless has not conducted any business in the State of Georgia other than its dealings with Koswire. (Id. ¶¶ 13–15, 20.)

[3] Bond received a "commission on all sales" he "procured on Alpha [Stainless's] behalf." (Compl., Dkt. [1-1] ¶ 13.)

3

Alpha Stainless sent three shipments of wire rod to Koswire, and they arrived at Koswire's Flowery Branch facility on December 14, 2015, January 4, 2016, and March 22, 2016. (Id. ¶¶ 19, 23, 28.) The wire Koswire received, however, was not annealed. (Id.) "Annealed wire has undergone a heat treatment, which alters the properties of the wire to increase its pliability." (Id. ¶ 11.) That increased pliability makes annealed wire "essential when manufacturing certain component parts made from wire." (Id. ¶ 12.) And so, if Koswire fails to provide annealed wire to customers who request it, those customers may, unknowingly, create defective products and machinery. (Id.)

Because annealed and non-annealed wire differ only in their chemical properties, though, Koswire could not tell, upon initial inspection, that the wire it received was not the wire it ordered. (Id. ¶ 19.) In fact, it was not until September 26, 2016, after receiving a complaint from one of its customers, that Koswire realized the wire was not annealed. (Id. ¶¶ 30, 32.)

Following that complaint, Koswire attempted to reach out to Alpha Stainless to determine whether the wire Alpha Stainless sent was annealed. (Id. ¶ 33.) But Alpha Stainless refused to give a direct answer, and so Koswire contacted Sandvik Heating Technology AB ("Sandvik"), "the entity that

4

supplied Alpha [Stainless] with the wire material to fulfill Koswire's order."

(Id. ¶ 34.)  Sandvik confirmed that the wire was not annealed.  (Id. ¶ 35.)

As a result, on January 19, 2018, Koswire filed the instant lawsuit

against Alpha Stainless, Alpha Wire, and Defendant Bond in the Superior

Court of Hall County.  Defendants removed the case to this Court on April 9,

2018.  They now move to dismiss.

### Analysis

Defendants argue that Koswire's Complaint should be dismissed, in

whole or in part, for three reasons: (1) the Court lacks personal jurisdiction

over Defendants; (2) Koswire's claims against Alpha Stainless should be

dismissed under the doctrine of *forum non conveniens*; and (3) Koswire's fraud

and attorneys' fees claims fail to adhere to the applicable pleading standards.

Koswire disagrees but, in the alternative, requests limited jurisdiction discovery

to substantiate the Court's personal jurisdiction over Defendants.  The Court

will address each of the issues raised, in turn, starting with those implicating

the Court's jurisdiction.  See Posner v. Essex Ins. Co., 178 F.3d 1209, 1214

(11th Cir. 1999) ("[A] court should decide a 12(b)(2) motion to dismiss before

a 12(b)(6) motion because 'a court without [12(b)(2)] jurisdiction lacks power

5

to dismiss a complaint for failure to state a claim.'" (quoting Arrowsmith v.

United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963))).

## I.    Personal Jurisdiction

### A.    Legal Standard: Federal Rule of Civil Procedure 12(b)(2)

"A plaintiff seeking the exercise of personal jurisdiction over a

nonresident defendant bears the initial burden of alleging in the complaint

sufficient facts to make out a prima facie case of jurisdiction." United Techs.

Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).   If the defendant then

"challenges jurisdiction by submitting affidavit evidence in support of its

position, 'the burden traditionally shifts back to the plaintiff to produce

evidence supporting jurisdiction.'" Id. (quoting Meier ex rel. Meier v. Sun

Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).   At that point, the

court takes as true any allegations in the complaint that are uncontroverted by

the defendants' affidavits or deposition testimony, Morris v. SSE, Inc., 843

F.2d 489, 492 (11th Cir. 1988) (citing Delong v. Washington Mills, 840 F.2d

843, 845 (11th Cir.1988)), while construing all reasonable inferences in favor

of the plaintiff for allegations and supporting evidence that "conflict with the

defendant's affidavits[.]" Meier, 288 F.3d at 1269.

6

B.     Analysis

Ordinarily, federal courts "use a two-step inquiry in determining whether

the exercise of personal jurisdiction of a non-resident defendant is proper," first

looking to "whether the exercise of jurisdiction would be appropriate under that

state's long arm statute," and then examining "whether the exercise of personal

jurisdiction over the defendant would violate the Due Process Clause of the

Fourteenth Amendment to the United States Constitution." Internet Sols. Corp.

v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009).  Defendants do not contend

that the Court cannot exercise personal jurisdiction over them under Georgia's

long arm statute, however.[4]  Therefore, the Court will proceed to the second

step of the personal jurisdiction inquiry: due process.

The Due Process Clause requires a nonresident to have certain

"minimum contacts" with the forum state so that the exercise of jurisdiction

---

[4]  In relevant part, the Georgia long-arm statute provides, "A court of this state may exercise personal jurisdiction over any nonresident . . . in the same manner as if he or  she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; . . . ." O.C.G.A. § 9-10-91.  This provision grants personal jurisdiction to the maximum extent permitted by procedural due process, without regard to whether the defendant is physically present in Georgia. Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames, 620 S.E.2d 352, 355–56 (Ga. 2005).

AO 72A
(Rev.8/82)

does not offend "traditional notions of fair play and substantial justice."

Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1267

(11th Cir. 2010). Once a plaintiff proves a nonresident defendant's minimum

contacts, the burden shifts to the defendant to make a "compelling case" that

the exercise of personal jurisdiction would not violate traditional notions of fair

play and substantial justice. Id.

Although it is well-established that personal jurisdiction comes in two

forms, "general" and "specific," see Goodyear Dunlop Tires Operations, S.A.

v. Brown, 564 U.S. 915, 919 (U.S. 2011), the parties here agree that if

Defendants are subject to jurisdiction at all, they must be subject to specific

personal jurisdiction. All three Defendants, however, contend that the Court

lacks such jurisdiction. The Court will address each of their positions.

1.    *Alpha Stainless*

Alpha Stainless argues that its contacts with Georgia are insufficient to

establish purposeful availment and that, even if they were sufficient, exercising

personal jurisdiction over Alpha Stainless would nonetheless offend traditional

notions of fair play and substantial justice.

**a.    Minimum Contacts**

8

To show a defendant's minimum contacts, the plaintiff must demonstrate that the defendant "purposefully availed" itself of the privilege of conducting activities in the forum state such that it "should reasonably anticipate being haled into court there." Diamond Crystal Brands, 593 F.3d at 1267 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–476 (1985)).   "At the heart of the inquiry is the notion of fair warning." Schmidt v. JPS Indus., Inc., No. 1:09-CV-3584-JEC, 2011 WL 1262165, at *3 (N.D. Ga. Mar. 31, 2011) (citing Diamond Crystal Brands, 593 F.3d at 1267).   The fair warning requirement is satisfied "if the defendant has purposefully directed [its] activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." Diamond Crystal Brands, 593 F.3d at 1267 (quoting Burger King, 471 U.S. at 472–73).   Thus, the Court must answer two questions: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; [and] (2) whether the nonresident defendant 'purposefully availed' [itself] of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws[.]" Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013); see also Aviation One of Fla., Inc. v.

9

Airborne Ins. Consultants (PTY), Ltd, 722 F. App'x 870, 879 (11th Cir. 2018).

> I.      *"Arising Out of" or "Relatedness"*

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1222 (11th Cir. 2009) (quoting Burger King, 471 U.S. at 472 ).

In this case, the Complaint adequately alleges that Alpha Stainless sold wire rod–not just once, but three times–to Koswire, a customer in Georgia, and shipped wire to Koswire that, according to the Complaint, did not conform to the terms of the orders.  Defendants also admit that "Alpha Stainless and Koswire negotiated for the sale of wire rod over a series of international telephone calls . . . ."  (Bullock Decl., Dkt. [4-3] ¶ 5.)  These contacts with Georgia are directly related to Koswire's claims for breach of contract and fraudulent inducement.  Therefore, the "arising out of" or "relatedness" prong is satisfied.

> ii.     *Purposeful Availment*

The Court must next consider whether Alpha Stainless "'purposefully availed' [itself] of the privilege of conducting activities within the forum state,

thus invoking the benefit of the forum state's law." <u>Louis Vuitton</u>, 736 F.3d at

1355.  When assessing whether a business relationship gives rise to minimum

contacts, courts must decide whether the defendant "deliberately engaged in

significant activities within a state or created continuing obligations with

residents of the forum." <u>Diamond Crystal Brands</u>, 593 F.3d at 1267.

Specifically, courts should analyze the substance of the agreement or

relationship, considering any "prior negotiations and contemplated future

consequences, along with the terms of the contract and the parties' actual

course of dealing." <u>Burger King</u>, 471 U.S. at 479.  This "highly realistic

approach" is a recognition that "a contract is ordinarily but an intermediate step

serving to tie up prior business negotiations with future consequences which

themselves are the real object of the business transaction." <u>Id.</u> (internal

quotations omitted).

   Alpha Stainless characterizes its contacts with Georgia as "minimal" and

thus "insufficient to confer personal jurisdiction . . . ."  (Br. In Supp. of Defs.'

Mot. To Dismiss ("Defs.' MTD Br."), Dkt. [4-1] at 11.)  The Court disagrees.

The allegations in the Complaint and supporting evidence, when construed in

Koswire's favor, describe month-long negotiations between Koswire and

11

Alpha Stainless, which gave rise to a twelve-month relationship between the parties that included three transactions, each involving their own set of communications and exchange of paperwork,[5] and resulted in the shipment of 120,000 pounds of wire rod into the State of Georgia. Based on these contacts, Alpha Stainless should have reasonably anticipated having to defend a lawsuit in Georgia if it failed to comply with the terms of the purchase orders. This is especially true when considering that Sandvik confirmed Alpha Stainless never sought to purchase annealed wire when fulfilling Koswire's orders. (Lee Decl., Dkt. [9-2] ¶ 35.)

In addition, the Eleventh Circuit has articulated a number of "plus factors" that further connect a defendant to the jurisdiction, and two of those are present here. <u>Diamond Crystal Brands</u>, 593 F.3d at 1268–69. They are "initiating the contractual relationship" and "negotiating the contract via telefaxes or calls with the plaintiff." <u>Id.</u> at 1268, 1269. The latter is obvious

---

[5] It is worth mentioning that three of these documents were invoices that Alpha Stainless emailed to Koswire before shipping the wire rod. Although Alpha Stainless minimizes the significance of those invoices when arguing against the exercise of personal jurisdiction, Alpha Stainless also relies on them for its position on *forum non conveniens* and, in fact, contends they set forth material terms governing the parties' relationship.

because, in Alpha Stainless's own words, the two "negotiated for the sale of wire rod over a series of international telephone calls" over the course of a month or so. (Bullock Decl., Dkt. [4-3] ¶ 5.) Deciding who initiated the parties' relationship is a little more difficult, however. But according to Koswire, it was Bond, acting on Alpha Stainless's behalf, who reached out to Koswire and solicited its business. And although the nature of Bond's relationship with Alpha Stainless is a matter of contention between the parties, (compare Bond Decl., Dkt. [4-4] ¶ 4, with Yong Decl., Dkt. [9-2] ¶ 6), at this stage in the litigation, if the parties' evidence conflicts, the Court is required to make all reasonable inferences in favor of Koswire, as the nonmovant. Meier, 288 F.3d at 1269. Thus, for the purposes of this Order, the Court concludes that Bond was (or at least reasonably appeared to be) acting as Alpha Stainless's agent when he reached out to Koswire to drum up business for Alpha Stainless, ultimately culminating in the transactions that form the basis of this litigation.

Therefore, taken as a whole, the Court concludes Alpha Stainless's relationship with Koswire gives rise to sufficient minimum contacts for the Court to exercise personal jurisdiction without violating Alpha Stainless's Due

13

Process rights.  Alpha Stainless purposefully engaged in and directed its

actions at Georgia and Koswire, a Georgia resident, and consequently, should

have reasonably anticipated defending a lawsuit in the State.

### b.    Fair Play and Substantial Justice

The Court also concludes that the exercise of jurisdiction over Alpha

Stainless comports with traditional notions of fair play and substantial justice.

Relevant factors in making this determination are:

> the burden on the defendant, the forum State's interest in
> adjudicating the dispute, the plaintiff's interest in obtaining
> convenient and effective relief, the interstate judicial system's
> interest in obtaining the most efficient resolution of controversies,
> and the shared interest of the several states in furthering
> fundamental substantive social policies.

Diamond Crystal Brands, 593 F.3d at 1274 (quoting Burger King, 471 U.S. at

447) (internal quotations omitted).  A defendant challenging personal

jurisdiction must make a "compelling case that exercising jurisdiction would be

constitutionally unfair."  Id. (internal quotations omitted).

Alpha Stainless's fairness arguments relate to the relative hardships that

the parties will face if the case continues in Georgia and the expected

advantages of litigating it in an alternate forum, the U.K.  Alpha Stainless

14

summarizes its points in the following way: "Georgia is burdensome, most performance related to the contract occurred overseas, most of the witnesses and evidence are in the U.K., and any assets that would satisfy a potential judgment are located outside the U.S." (Reply In Supp. Of Defs.' Mot. To Dismiss ("Defs.' Reply"), Dkt. [13] at 7.)

In the Court's view, this is insufficient to show that the exercise of jurisdiction would be constitutionally unfair. Although traveling to and litigating in Georgia might be an inconvenience to Alpha Stainless, that burden is minimal, considering that Alpha Stainless has only two employees. Koswire, on the other hand, maintains all of its operations in the State. And the allegedly non-conforming wire Alpha Stainless shipped is here, as are many of the relevant and necessary witnesses. So given that most of the evidence is here, witnesses are here, and the harm was suffered here, Georgia clearly has a strong interest in adjudicating this dispute. Additionally, Alpha Stainless knew it was conducting business with a company in Georgia, which it harmed by sending 120,000 pounds of wire that failed to conform to the specifications of the purchase orders. Cf. Diamond Crystal Brands, 593 F.3d at 1274 (finding a forum has a "manifest interest in providing an effective means of redress" when

a non-resident breaches a contract with a local business by failing to make payments required to be made in the forum); see also Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."). For these reasons, the Court finds that the exercise of personal jurisdiction over Alpha Stainless would not violate traditional notions of fair play and substantial justice.

2. *Alpha Wire and Defendant Bond*[6]

Bond is the sole member of Alpha Wire, and the Complaint treats their actions as one in the same. As a result, the Court either has personal

---

[6] At the outset, the Court notes that Koswire seems to blur the lines between the three Defendants, essentially treating them all as one. The Court rejects this conflation. It is clear from the Complaint and the evidence that each Defendant is a distinct and separate legal entity (or in the case of Bond, an individual), and that Alpha Stainless was responsible for certain actions relevant to this litigation, while Alpha Wire and Bond played a very different role. Koswire has not argued that jurisdiction would be proper under a conspiracy theory of personal jurisdiction, see Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC, 699 S.E.2d 456, 466 (Ga. Ct. App. 2010), nor do the allegations in the Complaint support such a finding. And although the Court has determined, for purposes of deciding Defendants' motion to dismiss, that Bond acted as an agent of Alpha Stainless, this is a one-way street when evaluating minimum contacts–in other words, Alpha Wire and Bond's contacts with Georgia, if made on behalf of Alpha Stainless, can be attributed to Alpha Stainless, but Alpha Stainless's contacts cannot be imputed upon Alpha Wire and Bond.

jurisdiction over both Alpha Wire and Bond, or it has jurisdiction over neither of them.  The Court finds it is the latter.

As mentioned above, and most importantly in the case of Alpha Wire and Bond, when deciding whether specific jurisdiction exists, a court must determine whether the "controversy is related to or 'arises out of' a defendant's contacts with the forum . . . ."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

Here, it cannot be said that Alpha Wire and Bond's contacts with Georgia give rise to Koswire's claims.  Koswire's only cause of action against Alpha Wire and Bond is a fraud claim, but the only allegation pertaining to Alpha Wire and Bond is that they represented to Koswire that Alpha Stainless could supply it with annealed wire.  That allegation, aside from being deficient to support a fraud claim, is also rebutted by Bond' affidavit, which illustrates the limited contacts he had with Koswire and the nominal role he played in arranging the transactions that form the basis of this litigation.  Indeed, according to Bond's affidavit, in an attempt to arrange a sale, he contacted a prospective buyer in Georgia–Koswire–which he then placed in

17

communications with a supplier in the U.K.–Alpha Stainless–to make a

purchase, for which he received a commission from the foreign seller.  All of

these actions occurred in Connecticut, and neither Bond nor Alpha Wire had

any involvement in negotiating the terms of the sale or carrying it out.[7]

Accordingly, it cannot be said that Alpha Wire or Bond "purposefully [did]

some act or consummated some transaction" in Georgia.  Diamond Crystal

Brands, 593 F.3d at 1260.  As a result, the Court lacks personal jurisdiction

under the Due Process Clause of the Fourteenth Amendment.  Defendants'

Motion to Dismiss is, therefore, **GRANTED** as to Alpha Wire and Bond.

## II.    *Forum Non Conveniens*

Defendants further argue that Koswire's claims against Alpha Stainless

should be dismissed because the two agreed to resolve any disputes resulting

from the subject transactions in England or Whales.  Their position is premised

on the language of a forum-selection clause included as part of Alpha

---

[7] The Court acknowledges that Bond was copied on subsequent emails between Koswire and Alpha Stainless.  (See, e.g., Bullock Decl., Dkt. [4-3] Ex. 1.)  But the Court's focus is on "contacts that the 'defendant himself' creates with the forum state."  Walden v. Fiore, 571 U.S. 277, 284 (2014).  Because there is no evidence suggesting Bond included himself in those communications or actively participated in them, they have no bearing on the Court's analysis.

Stainless's Terms and Conditions of Sale.

A.    The Forum-Selection Clause

Before dispatching each wire shipment, Alpha Stainless emailed Koswire a copy of the invoice corresponding to its purchase order.  (Bullock Decl., Dkt. [4-3] ¶ 7.)  Alpha Stainless sent the first of those invoices (associated with Koswire's first purchase order) on November 17, 2015. (Id. Ex. 1.)  The second and third invoices are dated January 1, 2016[8] and April 4, 2016.  (Lee Decl., Ex. D, Dkt. [9-6]; Compl., Dkt. [1-1] Ex. I.)

Each of the invoices had the following provision: "All goods sold subject to our terms and conditions of sale.  Copies available on request." (Bullock Decl., Dkt. [4-3] Ex. 1 (emphasis in original).)[9]

The Terms and Conditions referenced contain a Governing Law and Jurisdiction clause that reads,

> The Contract, and any dispute or claim arising out of or in connection with it or its subject or formation (including non-

---

[8]  Along with this invoice, Koswire received another copy of the first invoice, only this time dated January 1, 2016.

[9]  Although this clause is underlined in the first invoice, which was sent to Koswire on November 17, 2015, it is not underlined in the subsequent invoices. (Compl., Dkt. [1-1] Exs. C & F.)

19

contractual disputes or claims), shall be governed by, and
construed in accordance with, English Law, and the parties
irrevocably submit [sic] the exclusive jurisdiction of the Courts of
England and Wales.

(Bullock Decl., Dkt. [4-3] Ex. 2.)  It is undisputed that Koswire neither asked

for nor received Alpha Stainless's Terms and Conditions and, hence, never

read this clause.

> B.   Analysis

"Forum-selection clauses are enforceable through the doctrine of *forum

non conveniens*."  Aviation One, 722 F. App'x at 883.  Typically, to obtain

dismissal under that doctrine, a defendant must show three things: "(1) an

adequate alternative forum; (2) public and private factors weigh in favor of

dismissal; and (3) the plaintiff can reinstate [its] lawsuit in the alternative

forum without undue inconvenience or prejudice."  Id.  But the calculus

changes when there is a valid forum-selection clause.  Atl. Marine Const. Co.

v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 (2013).  In that

instance, it can be fairly said that the parties "waive[d] the right to challenge

the preselected forum as inconvenient or less convenient for themselves or their

witnesses, or for their pursuit of the litigation."  Id. at 64.  A court, then, "must

20

deem the private-interest factors to weigh entirely in favor of the preselected

forum," and "consider arguments about public-interest factors only." Id.

To that end, "a valid forum-selection clause [should be] given controlling

weight in all but the most exceptional cases." Id. at 63 (alteration in original).

Of course, this presupposes that an enforceable forum-selection clause

exists.  And so it seems that matters of enforceability are necessarily at the

forefront of the Court's analysis.  In this case, then, because Koswire

challenges the validity of the forum-selection clause, the Court must assess the

merits of that contention as a threshold matter.

    *1.*     *Validity of the Forum-Selection Clause*

"Forum-selection clauses are presumptively valid and enforceable unless

the plaintiff makes a 'strong showing' that enforcement would be unfair or

unreasonable under the circumstances." Aviation One, 722 F. App'x at 883

(quoting Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir.

2009)).[10]  Enforcement is unfair or unreasonable when:

---

    [10]  The Eleventh Circuit, however, appears to have recognized a departure from
this presumption for cases in which a plaintiff presents arguments going to the
formation of the contract.  Wylie v. Kerzner Int'l Bahamas Ltd., 706 F. App'x. 577
(11th Cir. 2017).  In those cases, there remains uncertainty as to whether federal or
state law governs the validity of a forum-selection clause when jurisdiction is based

> (1) [] formation [of the forum-selection clause] was induced by
> fraud or overreaching; (2) the plaintiff effectively would be
> deprived of its day in court because of the inconvenience or
> unfairness of the chosen forum; (3) the fundamental unfairness of
> the chosen law would deprive the plaintiff of a remedy; or (4)
> enforcement of such provisions would contravene a strong public
> policy.

Id. (quoting Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1296

(11th Cir. 1998)).  Koswire's arguments seem only to suggest that the forum-

selection clause falls into the first category of being induced by fraud or

overreaching.

"[I]n determining whether there was fraud or overreaching in a

non-negotiated forum-selection clause," the Court looks to see if "the clause

was reasonably communicated to the consumer."[11]  Krenkel, 579 F.3d at 1281.

---

on diversity of citizenship. Id. at 579–80 & n.2. But Koswire has not made any
arguments that the clause in Alpha Stainless's Terms and Conditions is unenforceable
under general contract principles.  Rather, Koswire accepts that the clause is
presumptively valid, but contends that enforcement would be unfair or unreasonable.
See Krenkel, 579 F.3d at 1281.  Therefore, the Court need not resolve any potential
contract formation issues (or attenuate choice-of-law issues); instead, the Court will,
as Koswire did, presume that the forum-selection clause is part of a valid contract and
apply the standard articulated in Krenkel and its progeny.

[11] Defendants do not dispute that the forum-selection clause was "non-
negotiated." Therefore, the Court will proceed under the assumption that it was.  The
Court notes, however, that it is not so convinced this characterization is as
straightforward as the parties seem to suggest given the present circumstances.
Compare Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991) (finding a forum-

AO 72A
(Rev.8/82)

This involves a "two-part test" that "takes into account the clause's physical characteristics and whether the plaintiff[] had the ability to become meaningfully informed of the clause and to reject its terms." Id.

Koswire does not make any arguments about the forum-selection clause's physical characteristics; Koswire instead argues that the clause was not reasonably communicated to it. In doing so, Koswire focuses on the fact that the clause was part of the Terms and Conditions of Sale, which were only referenced in Alpha Stainless's invoices, but never actually given to Koswire.

That Koswire never saw the forum-selection clause is not determinative of the issue, however. Rather, the salient question is whether Koswire "had the *ability* to become meaningfully informed of the clause and reject its terms." Krenkel, 579 F.3d at 1281 (emphasis added). The Court finds Koswire did, and as a result, the forum-selection clause is enforceable.

Critically, based on the evidence, Koswire had ample opportunity to

---

selection clause to be part of a non-negotiated, adhesion contract), with M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) (finding a private agreement to have been freely negotiated where the terms of the contract were altered by each side), and Liles v. Ginn-La W. End, Ltd., 631 F.3d 1242, 1247 (11th Cir. 2011) (finding form contracts that had not been altered by the parties to, nevertheless, be negotiated in part because the "contracts concerned sophisticated real estate transactions involving large sums of money").

obtain and review Alpha Stainless's Terms and Conditions before it received

the first of the wire rod shipments on December 14, 2015.  Indeed, although

Koswire asserts that "the first and only mention of the terms and conditions

came as a small-print reference at the bottom of Alpha [Stainless's]

invoices–dated January 1, 2016 and April 4, 2016," (Pl.'s Resp. To Defs.' Mot.

To Dismiss ("Pl.'s MTD Resp."), Dkt. [9] at 19 (citations omitted)), this

argument is rebutted by the Declaration of Carl Bullock, which says, "[p]rior to

the dispatch and shipment of the wire rod, Alpha Stainless emailed invoices for

each of Koswire's three purchase orders."  (Bullock Decl., Dkt. [4-3] ¶ 7.)  In

further support of Alpha Stainless's position, the Bullock Declaration includes

an email he sent to Koswire on November 17, 2015 with Invoice 843

(associated with Koswire's first purchase order) attached to it.  (Id. Ex. 1)  That

means Koswire received the invoice referencing Alpha Stainless's Terms and

Conditions nearly a month before any wire rod was delivered.

     As to the invoice, itself, the bottom of the document includes the

following statement: "All goods sold subject to our terms and conditions of

sale.  Copies available on request."  (Id.)  It is the same size font as the rest of

the invoice and is also underlined.  Thus, the invoice "clearly and unmistakably

24

conveys that it contains terms affecting the consumer's legal rights." <u>Miyoung</u>
<u>Son v. Kerzner Int'l Resorts, Inc.</u>, No. 07-61171-CIV, 2008 WL 4186979, at *4
(S.D. Fla. Sept. 5, 2008).  And even though the Terms and Conditions were not
attached, they were readily available, as the provision suggests.  Koswire, then,
had twenty-seven days between getting the invoice and receiving the first
shipment of wire rod to request the Terms and Conditions and review them.
Had Koswire disagreed with those Terms and Conditions–or, more pointedly,
the forum-selection clause included therein–Koswire could have made its
dissent known to Alpha Stainless or, potentially, cancelled its orders.[12]  Either
way, Koswire plainly had the opportunity to obtain the Terms and Conditions
from Alpha Stainless and, by extension, become meaningfully informed of the
forum-selection clause and reject its terms.  <u>Krenkel</u>, 579 F.3d at 1281.

 Tellingly, Koswire has not cited a single instance in which a court found

---

 [12]  Once again, the Court does not, and need not, make any substantive ruling
on the validity of the contract, its operative terms, or the applicable law controlling
such a determination and, by extension, passes no judgment on whether the forum-
selection clause would be a term of the parties' agreement under principles of contract
formation and, if so, what, if any remedial measures would have been available to
Koswire after it received the first invoice.  <u>See</u> *supra* note 5; <u>see also</u> Pl.'s MTD
Resp., Dkt. [9] at 17–21 (agreeing that forum-selection clauses are presumptively
valid but arguing that the clause at issue is invalid because it was not reasonably
communicated to Koswire).

25

a forum-selection clause unenforceable under <u>Krenkel</u>'s "reasonable communicativeness" test.[13]  And neither has the Court unearthed such a case. What is more, the majority of the cases in this Circuit applying that standard involve forum-selection clauses written and tendered by business entities, on the one hand, and accepted, whether read or unread, seen or unseen, by individual consumers, on the other.  <u>See, e.g.</u>, <u>Aviation One</u>, 722 F. App'x at 884; <u>Feggestad v. Kerzner Int'l Bahamas Ltd.</u>, 843 F.3d 915, 919 (11th Cir. 2016); <u>Pappas v. Kerzner Int'l Bahamas Ltd.</u>, 585 F. App'x 962, 965–66 (11th Cir. 2014); <u>Estate of Myhra v. Royal Caribbean Cruises, Ltd.</u>, 695 F.3d 1233, 1244–46 (11th Cir. 2012); <u>Miyoung Son</u>, 2008 WL 4186979, at *3.[14]  This

---

[13]  Koswire relies heavily on <u>Purac for Benefit of Firemen's Fund Ins. Co. v. Trafpak Servs., Ltd.</u>, a 1988 decision from the Northern District of Illinois.  694 F. Supp. 476, 477 (N.D. Ill. 1988).  Aside from lacking precedential value, <u>Purac</u> also far predates Krenkel and makes no mention of the foundational authority on the enforcement of forum-selection clauses in federal courts, <u>M/S Bremen v. Zapata Off–Shore Co.</u>, 407 U.S. 1 (1972).  That being the case, the Court elects to rely on more recent and persuasive authorities in lieu of <u>Purac</u>.

[14]  At the hearing held on June 21, 2018, Koswire suggested several of these cases, relied on by Defendants, should not influence the Court's decision because the terms and conditions were more readily accessible than the ones at issue here.  In <u>Feggestad</u>, for example, the plaintiffs received an email confirmation with a hyperlink to the terms and conditions, which, in turn, contained a forum-selection clause.  843 F.3d at 919.  But the Court finds this distinction of little consequence.  Just as the plaintiffs in <u>Feggestad</u> could have clicked on the hyperlink and read the terms and conditions, Koswire could have contacted Alpha Stainless and requested the terms and

case, by contrast, involves two sophisticated companies.  It is, in the Court's opinion, unreasonable to charge individuals, say, checking into a vacation resort, Feggestad, 843 F.3d at 919, or preparing for a cruise, Estate of Myhra, 695 F.3d at 1246, to apprise themselves of terms and conditions and their legal ramifications, but not to hold a sizeable company–indeed, one that purchases millions of pounds of raw materials annually–to at least the same standard.  See Marco Forwarding Co. v. Cont'l Cas. Co., 430 F. Supp. 2d 1289, 1294–95 (S.D. Fla. 2005) (seeing no "reason to provide special protection to [the plaintiff business] as if it were an hapless and unsophisticated party to th[e] contract").  The Court, therefore, finds that Koswire has failed to demonstrate that the forum-selection clause was induced by fraud or overreaching or otherwise unenforceable under the applicable legal standard.

2.    *Forum Non Conveniens Analysis*

Because the Court finds that a valid forum-selection clause controls, Koswire's choice of forum is given no deference, and the Court is required to

---

conditions before the first shipment arrived.

find that the private-interest factors favor Alpha Stainless.[15]  See GDG

Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1029 (11th Cir. 2014)

("A binding forum-selection clause requires the court to find that the *forum non*

*conveniens* private factors entirely favor the selected forum.").

The Court, therefore, moves to the public-interest factors.  They might

include:

> the administrative difficulties flowing from court congestion; the
> local interest in having localized controversies decided at home;
> the interest in having the trial of a diversity case in a forum that is
> at home with the law; the avoidance of unnecessary problems in
> conflict of laws, or in the application of foreign law; and the
> unfairness of burdening citizens in an unrelated forum with jury
> duty.

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (internal quotations

and citation omitted).

Koswire gives only a passing mention to this part of the analysis, stating

broadly, "[a]t a minimum, the public policy heavily favors Koswire's ability to

prosecute its claim in Georgia."  (Pl's MTD Resp., Dkt. [9] at 21.)  This fails to

---

[15]  The private factors include: "ease of access to sources of proof; availability
of compulsory process for attendance of unwilling, and the cost of obtaining
attendance of willing, witnesses . . . and all other practical problems that make trial of
a case easy, expeditious and inexpensive."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501,
508 (1947).

AO 72A
(Rev.8/82)

explain, in any meaningful way, that enforcement of the forum-selection clause would contravene public policy.  And so, in short, Koswire has not carried its burden of showing "extraordinary circumstances unrelated to the convenience of the parties" that justify denying Defendants' motion when a valid forum-selection clause requires litigation in England or Wales.  See Atl. Marine, 571 U.S. at 62.  Consequently, both the private and public-interest factors weigh in favor of dismissing this case for *forum non conveniens*.

So, because the clear terms of the forum-selection clause unambiguously direct litigation to the courts of England and Wales and because Koswire has not contended that it would be unable to reinstate its lawsuit in that forum without undue inconvenience or prejudice, the Court finds that this case should be dismissed for *forum non conveniens*.  Defendants' Motion to Dismiss is, therefore, **GRANTED** on this issue.

## III.   Remaining Issues

Having found dismissal of this case proper under the doctrine of *forum non conveniens*, the Court need not address Defendants' remaining arguments related to the sufficiency of Koswire's fraud and attorney's fees claims.

In addition, the Court finds jurisdictional discovery to be unnecessary in

light of its previous rulings.  As to Alpha Wire and Bond, Koswire has failed to

make a *prima facie* showing of personal jurisdiction, so jurisdictional discovery

would be improper.  See <u>Butler v. Sukhoi Co.</u>, 579 F.3d 1307, 1314 (11th Cir.

2009) ("Inasmuch as the complaint was insufficient as a matter of law to

establish a *prima facie* case that the district court had jurisdiction, the district

court abused its discretion in allowing the case to proceed and granting

discovery on the jurisdictional issue.").  And as to Alpha Stainless, Koswire

has not requested jurisdictional discovery on the issue of *forum non conveniens*

or explained how such discovery would aid the court in analyzing the parties'

forum-selection clause.  <u>Aviation One</u>, 722 F. App'x at 886 ("Nor is discovery

generally necessary when addressing *forum non conveniens*, particularly when

the case involves a forum-selection clause.").  Accordingly, Koswire's Motion

for Jurisdictional Discovery [10] is **DENIED**.

## Conclusion

In accordance with the foregoing, Defendants' Motion to Dismiss [4] is

**GRANTED**, and Koswire's Motion for Limited Jurisdictional Discovery [10]

is **DENIED**.  This action is **DISMISSED** for lack of personal jurisdiction over

Defendants Alpha Wire and Bond and for *forum non conveniens* as to

30

Defendant Alpha Stainless.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED**, this _1st_ day of August, 2018.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

31